UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
FILADELFO RODRIGUEZ,                                          :
                                                                          :
                                        Plaintiff,                   :
                                                                          :
                    -against-                                        :          REPORT AND
                                                                          :          RECOMMENDATION
EDEN ROSE, CORP. d/b/a EDEN FLOWERS, ISAAC   :
SHALOMOV, and ALEXANDER SHALOMOV,         :          No. 22-CV-500-ENV-JRC
                                                                          :
                                        Defendants.               :
--------------------------------------------------------------------x
JAMES R. CHO, United States Magistrate Judge:

      Plaintiff Filadelfo Rodriguez ("Rodriguez" or "plaintiff") brings this action against Eden

Rose, Corp., an entity doing business as Eden Flowers ("Eden" or "corporate defendant"), Isaac

Shalomov, and Alexander Shalomov ("individual defendants" and collectively, "defendants")

pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York

Labor Law ("NYLL") § 650 *et seq*.  *See generally* Compl., Dkt. 1.  Upon plaintiff's application

and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the

Court entered defendants' default on March 11, 2022.  *See* Dkt. 8.  Plaintiff now moves for

default judgment and seeks unpaid minimum and overtime wages, spread of hours premiums,

statutory penalties, liquidated damages, pre-judgment interest, attorney's fees, and costs.[1]  *See*

Proposed Default J., Dkt. 11-9; *see also* Mem. of Law in Supp. of Mot. for Default J., Dkt. 12 at

20.  Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, is

---

[1] In the Complaint, plaintiff sought post-judgment interest, but failed to mention this form of relief in his motion for default judgment.  *See* Compl., Prayer for Relief, at 11.  The Court finds that plaintiff has abandoned his request for post-judgment interest.  *See, e.g., State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in [its] brief, we consider those arguments abandoned.") (citation omitted).

plaintiff's motion for default judgment ("motion"). *See* Order Referring Motion dated April 12, 2022. For the reasons set forth below, this Court respectfully recommends granting plaintiff's motion.

## I.   Background

The following facts are drawn from plaintiff's Complaint and declarations and are accepted as true for purposes of this motion. Defendant Eden was and is a domestic corporation organized under the laws of the State of New York, with its principal place of business at 5104 16th Avenue, Brooklyn, New York 11204. *See* Compl. ¶ 7. Defendants Isaac Shalomov and Alexander Shalomov are joint owners, officers, directors, managers, supervisors, and proprietors of Eden. *Id*. ¶ 8. The individual defendants had the power to hire and fire employees at Eden, determine and approve rates and methods of pay, determine and approve employee work schedules, supervise and control the work of the employees, and create and maintain employment records at Eden. *Id*. ¶ 9. At all relevant times, the gross revenues of Eden were in excess of $500,000. *Id*. ¶ 37. Moreover, at all relevant times, defendants were engaged in the commerce or production of goods, engaging in commerce within the meaning of 29 U.S.C. § 203, and regularly handled products which had been moved in commerce. *Id*. ¶ 10.

### A.   Plaintiff's Employment History

Defendants employed plaintiff as a floral designer, cashier, customer attendant, and delivery worker from in or about May 2015 until in or about December 24, 2021. *Id*. ¶ 11. Plaintiff was regularly scheduled to work Monday through Thursday from 9:00 a.m. to 7:00 p.m., or 10 hours per day, and Friday from 9:00 a.m. until 4:00 p.m., 5:00 p.m. or 7:00 p.m., (depending on commencement of the Sabbath), or 9 to 12 hours per day. *Id*. ¶ 22. Plaintiff's hours totaled 49-52 hours per week. *Id*; s*ee also* Declaration of Filadelfo Rodriguez ("Rodriguez

Decl."), Dkt. 10, ¶ 8.  In 2016, defendants paid plaintiff, in cash, at a fixed rate of $110 per day ($550 per week) for all hours worked between 49 and 52 hours per week.  *See* Compl. ¶ 24.  In 2017, this fixed rate changed to $120 per day ($600 per week).  *Id*. ¶ 25.  In 2018, this fixed rate changed to $130 per day ($650 per week).  *Id*. ¶ 26.  In 2019 and 2020, this fixed rate changed to $140 per day ($700 per week).  *Id*. ¶ 27.  In 2021, this fixed rate changed to $150 per day ($750 per week).  *Id*. ¶ 28.  Plaintiff was not provided with wage statements setting forth, among other things, plaintiff's gross wages, any deductions from plaintiff's gross wages, or net wages.  *Id*. ¶ 29.

**B.    Defendants' FLSA and NYLL Violations**

Plaintiff regularly worked for the defendants more than 40 hours per week, but he did not receive any overtime premium of one-and-one-half times his regular rates of pay for those hours.  *See* Compl. ¶ 31.  Plaintiff alleges that he did not receive the statutory minimum wage, was not paid for overtime worked, and was not paid a spread of hours premium.  *Id*. ¶¶ 30-32.  Plaintiff further alleges that he was not given proper wage statements during the period in which he worked.  *Id*. ¶ 29.

On January 27, 2022, plaintiff timely commenced this action[2] alleging, *inter alia*,

---

[2] The NYLL has a six-year statute of limitations, *see* N.Y. Lab. Law § 663(3), and the FLSA has a two-year statute of limitations, *see* 29 U.S.C. § 255(a), unless the plaintiff shows that the employer's actions were willful, in which case the limitations period extends to three years.  *See id*.  Plaintiff alleges that defendants willfully violated both the FLSA and the NYLL.  *See* Compl. ¶¶ 41, 45, 49.  "Generally, courts have found that a defendant's default establishes willfulness." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (citing *Hernandez v. PKL Corp.*, No. 12-CV-2276, 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013)); *see also Suarez Castaneda v. F&R Cleaning Servs. Corp.*, No. 17-CV-7603, 2019 WL 5694118, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 5693768 (E.D.N.Y. July 8, 2019) ("The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness."); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)) ("In the present case, defendants defaulted, and therefore the three-year statute of

violations of the FLSA (Count I) and NYLL (Count II).  *See* Compl. ¶¶ 34-58.  All defendants

were served on January 27, 2022.[3]  *See* Dkt. 2.  Defendants have failed to answer the Complaint

or otherwise appear in this case.  On March 11, 2022, the Clerk entered a Certificate of Default

as to all defendants.  *See* Dkt. 8.  On April 11, 2022, plaintiff moved for default judgment.  *See*

Dkts. 9-12.

## II.    Discussion

### A.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment.

The Rule sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v.*

*Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See*

*id.*; *see also* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise, the clerk must enter the party's default").  This first step is

nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second,

after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise

move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a

default judgment.  *See* Fed. R. Civ. P. 55(a), (b)(2).

---

limitations applies.").  Here, the defaulting defendants have not responded to the Complaint
despite proper service.  Plaintiff also submitted affidavits of service confirming that the
defaulting defendants were provided notice of the motion for default judgment.  The defaulting
defendants have nonetheless failed to respond to plaintiff's motion for default judgment or to
otherwise appear in this action.  Accordingly, the defaulting defendants' failure to respond to the
Complaint or the instant motion demonstrates that their default was willful and this Court applies
the three-year limitations period for the FLSA violations.

[3] Based on the affidavits of service, this Court finds that plaintiff properly served defendants in
accordance with Fed. R. Civ. P. Rule 4(e).

Here, on March 11, 2022, the Clerk of the Court entered a default against defendants, after defendants failed to respond to the Complaint. *See* Dkt. 8. To date, defendants have not appeared or moved to vacate the entry of default.

Whether or not a default judgment is issued is up to the discretion of the court. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (internal quotations and citations omitted)).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the

5

defaulting party.  *See id.*  Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default.  *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true.  *See Masino v. Architectural Pavers Corp.*, No. 09-CV-2213, 2010 WL 415286, at *2 (E.D.N.Y. Jan. 15, 2010); *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor.").  A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case."  *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted).  Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, *see* Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *King v. STL Consulting LLC*, No. 05-CV-2719, 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not

violated in awarding damages that accrued during the pendency of a litigation, so long as the Complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved -- the more money involved, the less justification for entering the default judgment. *See Hirsch v. Innovation Int'l, Inc.*, No. 91-CV-4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the Complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019); *see also Enron Oil*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (collecting cases).

Here, defendants did not respond to the Complaint despite proper service. *See* Dkts. 4-6;

Declaration of Justin Cilenti ("Cilenti Decl.") (Dkt. 11) at ¶¶ 4-7.  Plaintiff filed an affidavit of service confirming service of the motion for default judgment on defendants.  *See* Dkts. 15-17.[4] Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or otherwise appear in this action.  Accordingly, defendants' failure to respond to the Complaint or the instant motion demonstrates that their default was willful.

As to the second factor, defendants' failure to appear in this action has left the Court unable to assess whether defendants have a meritorious defense.  This weighs in favor of granting a default judgment.  *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

With respect to the third factor, because defendants have demonstrated a refusal to engage in this action, "there are no additional steps available to secure relief [against defendant] in this Court." *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (quoting *Bridge Oil Ltd. v. Emerald Reefer*

---

[4] Plaintiff filed his motion for default judgment on April 11, 2022 (Dkts. 9-12).  Fifteen days later on April 26, 2022, plaintiff, through a process server, personally served the motion papers on defendants, Dkts. 15-17 (affidavits of service), and 18 days after filing the motion, on April 29, 2022, mailed the motion papers to the individual defendants only (Dkts. 16, 17).  Plaintiff did not file the affidavits of service until May 13, 2022 – 32 days later.  Local Civil Rule 55.2 (Default Judgment) requires that "all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) above shall *simultaneously be mailed* to the party against whom a default judgment is sought . . . . Proof of such mailing shall be filed with the Court." Local Civil Rule 55.2(c) (emphasis added).  Plaintiff failed to mail his motion papers to defendants upon filing as required by Local Civil Rule 55.2(c).  However, the Court excuses plaintiff's failure to comply with Local Civil Rule 55.2(c) in light of plaintiff's eventual, but late, service of the motion papers.  Given plaintiff's personal service of the motion papers on defendants, followed by service of the Court's notice of hearing on the default motion (Dkt. 14), this Court finds that defendants have notice of these default proceedings, and defendants have not been prejudiced by the late service of the motion papers.

*Lines, LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).  This Court finds that the prejudice factor weighs in favor of default judgment.

Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

### B.    FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers."  *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).  To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists, and (2) the employment falls under the FLSA's individual or enterprise coverage provisions.  *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  "Because the statute defines

employer in such broad terms, it offers little guidance on whether a given individual is or is not

an employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

There is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980

F. Supp. 2d 366, 374-75 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537

F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an

employer is "operational control" over employees, meaning whether the individual exercises

control over and makes decisions that "directly affect the nature or conditions of the employees'

employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). Thus, to determine

whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that

courts consider is "whether the alleged employer possessed the power to control the workers in

question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*,

172 F.3d at 139 (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal

citation omitted); *see Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors

are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employment records." *Irizarry*,

722 F.3d at 104-05 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

Despite these enumerated factors, however, a district court should consider any factor relevant to

its assessment of the economic realities of an employer-employee relationship. *See Ling Nan*

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-72 (2d Cir. 2003).

Moreover, for the FLSA's minimum wage and overtime provisions to apply to an

individual employee, the employee's work must directly involve or relate to interstate commerce

or, in other words, "the movement of persons or things . . . among the several States or between any State and any place outside thereof." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103) (emphasis omitted).  As relevant here, for an employee to plead that they are covered by the FLSA because his employer is an enterprise engaged in interstate commerce, plaintiff must demonstrate that his employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of commerce, including the "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce[.]"  29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also* 29 C.F.R. § 779.238.

Plaintiff's unopposed allegations are sufficient to show that he is entitled to the FLSA's protections.  First, plaintiff sufficiently demonstrated that individual defendants (*i.e.*, Isaac Shalomov and Alexander Shalomov) employed plaintiff under the definition of the FLSA. Plaintiff alleges that the individual defendants had the power to hire and fire employees at Eden, determine and approve rates and methods of pay, determine and approve employee work schedules, supervise and control the work of the employees, and create and maintain employment records at Eden.  Compl. ¶ 9.  Plaintiff further alleges that defendants "failed to keep true and accurate records of hours worked by each employee covered by an hourly wage rate, the wage paid to all employees, or other similar information in contravention of New York Labor Law § 661."  *Id*. ¶ 55.  As the other "economic reality" factors are clearly satisfied by plaintiff's allegations, this Court thus finds that the individual defendants (Isaac Shalomov and Alexander Shalomov) employed plaintiff under the definition of the FLSA.  *See Irizarry*, 722 F.3d at 104-05; *see also Sarmiento Perez v. Comhar Grp., LLC*, No. 19-CV-0964, 2020 WL

1364908, at *3-*4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares Corp.,* No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Second, plaintiff's allegations also are sufficient to conclude that defendants employed plaintiff jointly with Eden. Plaintiff alleges that defendants hired plaintiff to work at Eden and that defendants were managers and owners of Eden. *Id.* ¶¶ 8-9. Plaintiff's allegations that the individual defendants and corporate defendant are part of a common ownership or management of a business, coupled with defendants' default, are sufficient to allege joint employment following a default. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011). Based on the plaintiff's allegations, this Court finds that plaintiff was jointly employed by the individual defendants and corporate defendant.

Third, plaintiff's allegations are sufficient to conclude that the defendants operated in interstate commerce. Plaintiff's allegations that Eden has annual revenue in excess of $500,000 and that the corporate defendant "was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a)" are sufficient to meet the pleading requirement for an enterprise coverage FLSA claim in a default proceeding. *See* Compl. ¶¶ 35, 37; *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs' specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA."), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Although some courts have questioned whether complaints that merely repeat the

language of a statute without alleging supporting facts properly plead a cause of action, *see, e.g., Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85 (E.D.N.Y. 2012), other courts have held allegations similar to those made here with respect to enterprise coverage to be sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise and that generates "over $500,000.00 in annual sales d[id] not exclusively come from New York State." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see also Huerta v. Victoria Bakery*, No. 10-CV-4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012). Here, although the Complaint does not specify what products moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA as it is likely that at least some of the materials required to operate the flower shop originated from outside of New York. *See, e.g.*, *Luna*, 2017 WL 835321, at *5 (collecting cases). Accordingly, this Court recommends finding that the allegations in plaintiff's Complaint, admitted by entry of default, are sufficient to conclude that the individual defendants jointly employed plaintiff with Eden, and his employment falls under the FLSA's protections.

### C.    NYLL

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, No. 18-CV-557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y.

Apr. 21, 2020).

As stated above, this Court finds that plaintiff was jointly employed by the individual

defendants and Eden under the FLSA, and, therefore, this Court applies the same standards to

recommend finding that plaintiff was jointly employed by the individual defendants and Eden

under the NYLL.[5] *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128

(E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when

determining whether defendants are jointly liable as employers under the FLSA and the NYLL.")

(collecting cases).

## III.   Relief

A party's default "is not considered an admission of damages." *Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v.

Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Accordingly, "[i]f the defaulted complaint suffices to

establish liability, the court must conduct an inquiry sufficient to establish damages to a

'reasonable certainty.'"  *Gunawan*, 897 F. Supp. 2d at 83 (quoting *Credit Lyonnais Sec. (USA),

Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based

upon evidence presented at a hearing or upon a review of detailed affidavits and documentary

evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508

(2d Cir. 1991).

---

[5] As the Court finds that the individual defendants and Eden were jointly plaintiff's employers, each defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in plaintiff's favor. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (citing *Pineda*, 831 F. Supp. 2d at 685); *Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625, 2015 WL 12645527, at *4 (E.D.N.Y. Aug. 27, 2015).

14

A.    **Unpaid Wages Due**

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]." *Lu Nan Fan v. Jenny & Richard's Inc.*, No. 19-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotations and citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn statements "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages in this context." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotations and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera*, 2015 WL 1529653, at *8. "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Lu Nan Fan*, 2019 WL 1549033, at *9.

Plaintiff submitted his own declaration, along with a sworn affirmation of his attorney, Justin Cilenti, describing his dates of employment along with average hours worked and wages per week. *See* Cilenti Decl., Dkt. 11 at ECF pages 1-7; Rodriguez Decl., Dkt. 10 at ECF pages 1-4.[6] Plaintiff's attorney also submitted exhibits in support of the instant motion, including tables of damage calculations. *See* Dkts. 11-6, 11-7. In light of defendants' default, plaintiff's evidence on damages stands uncontroverted, and, therefore, plaintiff provided a sufficient basis upon which to determine damages.

---

[6] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

### 1.    Regular Wage

To calculate a plaintiff's minimum wage and overtime compensation, the Court must first determine the plaintiff's regular hourly wage rate. *See Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011). Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract." 29 C.F.R. § 778.108.

Because plaintiff was compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate." *Id.* § 778.113(a). "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-0165, 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).

Plaintiff alleges that he was paid "in cash [at a fixed rate] . . . straight time for all hours

worked." Compl. ¶¶ 24-28. Further, plaintiff alleges that he generally worked 49-52 hours per week and that pay was awarded for the total number of hours worked, including those hours worked beyond 40 hours each week. *Id.* In light of this, the Court finds that plaintiff's fixed salary was compensation for all hours worked per week.[7] *See, e.g., Kim v. Fam. Bob Inc.,* No. 20-CV-906, 2021 WL 7906544, at *10 (E.D.N.Y. Jan. 26, 2021) (Court calculates plaintiff's regular rate for each week by dividing the fixed rate of pay for that week by 52, the 'number of hours which the salary is intended to compensate[,]' 29 C.F.R. § 778.113, as agreed to by the parties at the outset of plaintiff's employment") (citation omitted).

For the period plaintiff worked from January, 2016 until December 25, 2016 (47 weeks) (Period 1), he was paid $550 per week. *See* Dkt. 11-6; Compl. ¶ 24. Therefore, his regular rate of pay was $10.58 per hour on the weeks in which he worked 52 hours and $11.22 per hour on the weeks in which he worked 49 hours for that period.

For the period worked from December 26, 2016 to December 31, 2017 (53 weeks) (Period 2), he was paid $600 per week. *See* Dkt. 11-6; Compl. ¶ 25. Therefore, his regular rate of pay was $11.54 per hour on the weeks in which he worked 52 hours and $12.24 per hour on the weeks in which he worked 49 hours for that period.

For the period worked from January 1, 2018 to December 30, 2018 (52 weeks) (Period 3), he was paid $650 per week. *See* Dkt. 11-6; Compl. ¶ 26. Therefore, his regular rate of pay was $12.50 per hour on the weeks in which he worked 52 hours and $13.27 per hour on the weeks in which he worked 49 hours for that period.

For the period worked from December 31, 2018 until December 27, 2020 (104 weeks),

---

[7] Plaintiff calculated his regular rate of pay by dividing his weekly wages by the total number of hours worked. *See* Dkt. 11-6.

(Period 4), he was paid $700 per week. *See* Dkt. 11-6; Compl. ¶ 27. Therefore, his regular rate of pay was $13.46 per hour on the weeks in which he worked 52 hours and $14.29 per hour on the weeks in which he worked 49 hours for that period.

Finally, plaintiff alleges that for the period he worked from December 28, 2020 until December 26, 2021 (52 weeks) (Period 5), he was paid $750 per week. *See* Dkt. 11-6; Compl. ¶ 28. Therefore, his regular rate of pay was $14.42 per hour on the weeks in which he worked 52 hours and $15.31 per hour on the weeks in which he worked 49 hours for that period.

### 2.    Unpaid Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at least a minimum hourly rate for every hour that they work. *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). "Although a plaintiff may be 'entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.'" *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170, 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (brackets omitted)), *report and recommendation adopted*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019). "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (citation omitted).

At all times relevant here, the FLSA required defendants to pay plaintiff a minimum hourly wage of $7.25. *See* 29 U.S.C. § 206(a)(1)(C). The applicable minimum wage under the NYLL for a New York City employer with ten or less employees during the relevant period was $9.00 on or after December 31, 2015, $10.50 on or after December 31, 2016, $12.00 on or after

December 31, 2017, $13.50 per hour on or after December 31, 2018, and $15.00 per hour on or after December 31, 2019.[8]  *See* N.Y. Lab. Law § 652(1)(a)(ii).  Given that the minimum wage under NYLL is higher than that of the FLSA, this Court analyzes plaintiff's minimum wage entitlement under the NYLL.

Here, plaintiff claims that he was deprived of a minimum wage.  *See* Compl. ¶ 13; *see also* Dkt. 11-6 at ECF pages 5-8 ("Min. Wages Owed")  Specifically, Plaintiff alleges minimum wages owed for the time period between May 5, 2019 and September 29, 2019, the time period from January 5, 2020 to December 27, 2020 and the time period between May 2, 2021 to September 26, 2021.  *See* Dkt. 11-6 at ECF pages 5-8.

Within the six-year statute of limitations under the NYLL, plaintiff performed work for defendants from January 2016-December 2021.  During Period 4 (for the limited dates of May 5, 2019 to September 29, 2019 and January 5, 2020 to December 27, 2020) and during Period 5 (for the limited dates of May 2, 2021 to September 26, 2021) defendants paid plaintiff at an hourly rate below the minimum wage.  *See* Dkt. 11-6 at ECF pages 5-8.

During Period 4 (for 22 weeks from May 5, 2019 to September 29, 2019) plaintiff was paid at an hourly rate of $13.4615385 per hour for weeks in which he worked 52 hours (700 ÷ 52). During this time period, plaintiff was paid approximately $0.03846154 below the hourly minimum wage rate ($13.50 - $13.4615385) and is therefore owed $1.53846154 for the first 40 hours he worked in each week.  In total, plaintiff is owed $33.8461538 ($1.53846154 × 22

---

[8] The rates listed apply to "small employers," or those employers with "ten or less employees." N.Y. Lab. Law § 652(1)(a)(ii).  "In the absence of information as to the size of an employer's workforce, courts apply the rate for small employers."  *Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095, 2019 WL 4739047, at *7 n.6 (E.D.N.Y. June 12, 2019), *report and recommendation adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019).  As plaintiff has not provided any information indicating whether the defendants were small or large employers, this Court applies the rates for small employers.

weeks) for this period.

Also during Period 4 (for 30 weeks from January 5, 2020 to April 26, 2020 and October 4, 2020 to December 27, 2020) plaintiff was paid at an hourly rate of $14.2857143 per hour for weeks in which he worked 49 hours (700 ÷ 49). During this time period, plaintiff was paid approximately $0.71428571 below the hourly minimum wage rate ($15.00 - $14.2857143) and is therefore owed $28.5714286 for the first 40 hours he worked in each week. In total, plaintiff is owed $857.142857 ($28.5714286 × 30 weeks) for this time period.

Also, during Period 4 (for 22 weeks from May 3, 2020 to September 27, 2020) plaintiff was paid at an hourly rate of $13.4615385 per hour for weeks in which he worked 52 hours (700 ÷ 52). During this time period, plaintiff was paid approximately $1.53846154 below the hourly minimum wage rate ($15.00 - $13.4615385) and is therefore owed $61.5384615 for the first 40 hours he worked in each week. In total, plaintiff is owed $1353.84615 ($61.5384615 × 22 weeks) for this time period.

 Finally, during Period 5 (for 22 weeks from May 2, 2021 to September 26, 2021) plaintiff was paid at an hourly rate of $14.4230769 per hour for weeks in which he worked 52 hours (750 ÷ 52). During this time period, plaintiff was paid approximately $0.57692308 below the hourly minimum wage rate ($15.00 - $14.4230769) and is therefore owed $23.0769231 for the first 40 hours he worked in each week. In total, plaintiff is owed $507.692308 ($23.0769231 × 22 weeks) for this time period.

Based on these calculations, this Court recommends awarding plaintiff **$2,752.53** in unpaid minimum wages.

### 3.    Unpaid Overtime Compensation

Under the FLSA, an employers must pay an employee overtime compensation at 1.5

times the employee's regular rate of pay for each hour worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a).  The NYLL incorporates and restates the FLSA's requirements, and the analysis of overtime claims under the NYLL is generally the same as under the FLSA.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).  "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Guerrero*, 2019 WL 4889591, at *8 (internal quotations and citation omitted).

Though plaintiff has made allegations sufficient to hold defendants liable under the overtime provisions of both the FLSA and NYLL, *see* Compl. ¶¶ 31, they are "not entitled to recover under both FLSA and NYLL for overtime earned during the same period."  *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028, 2018 WL 1770660, at *10 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  The Court may, however, exercise its discretion to "award [] damages under the statute providing the greatest amount of relief."  *Id.*  Given that the higher rate of minimum wage under New York law leads to a higher overtime rate under the NYLL than the FLSA, this Court analyzes plaintiff's entitlement to overtime wages under the NYLL.  *See Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (awarding back wages under the NYLL rather than the FLSA because "[p]laintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL").

Here, plaintiff sufficiently demonstrates that defendants did not pay his overtime

compensation for 9 hours worked during certain weeks of his employment and 12 hours worked during other weeks of his employment.  *See* Compl. ¶¶ 24-28; *see also* Dkt. 11-6.  Plaintiff is entitled to overtime compensation for these hours worked over 40 hours per week.  For certain weeks during plaintiff's period of employment, plaintiff was paid at a rate higher than the minimum wage; for these weeks, the Court will apply an overtime rate owed of 1.5 times the employer's regular pay.  For weeks in which plaintiff was paid at a rate lower than the minimum wage, the Court will apply an overtime rate owed of 1.5 times the minimum wage.  *See* Section III.A.2 (in which this Court recommends awarding plaintiff damages for unpaid minimum wages).  In accordance with the weekly pay rates as described in plaintiff's affirmation and Dkt. 11-6, this Court recommends awarding plaintiff **$63,236.20** in unpaid overtime wages.

### 4.    Spread of Hours Compensation

The NYLL provides that if the length of time between the beginning and end of an employee's workday (or the employee's "spread of hours") surpasses ten hours, the employer must pay the employee an additional hour of pay at the minimum wage.  *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (quoting 12 N.Y.C.R.R. § 146-1.6); *see also Pineda v. Tokana Café Bar Restorant Inc.*, No. 16-CV-1155, 2017 WL 1194242, at *3 (S.D.N.Y. Mar. 30, 2017).  "Spread of hours" includes "working time plus time off for meals plus intervals off duty."  *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *9 (E.D.N.Y. Nov. 9, 2021) (quoting N.Y. Comp. Code R. & Regs. tit. 12 § 146-1.6).

Here, plaintiff contends that he worked more than ten hours per day, and defendants never paid him the spread of hours premium he was entitled to during the course of his employment. *See* Rodriguez Decl., Dkt. 10 at ¶ 4.  Plaintiff alleges that he worked twelve hours per day on certain Fridays (depending on the commencement of the Sabbath) for the entire

period of his employment. *See* Compl. ¶ 22. Plaintiff alleges that he worked for twelve hours per day on 22 Fridays in 2019, 22 Fridays in 2020, and 22 Fridays in 2021. *See* Dkt. 11-6. Plaintiff allegedly was not paid for an additional hour of pay at the minimum wage during the 2019-2021 time period. *Id*. Since plaintiff worked more than 10 hours per day for one day per week and was not paid for one additional hour at minimum wage during the 2019-2021 period, as reflected in the Complaint and his declaration, he is entitled to spread of hours pay for the 2019-2021 period only.

For 2019, plaintiff should have been paid $13.50 per hour for 1 hour per week, for 22 weeks, which totals **$297.00**. For 2020, plaintiff should have been paid $15.00 per hour for 1 hour per week, for 22 weeks, which totals **$330.00**. For 2021, plaintiff should have been paid $15.00 per hour for 1 hour per week, for 22 weeks, which totals **$330.00**. Adding the foregoing amounts together, this Court recommends awarding plaintiff a total of **$957.00** ($297.00 + $330.00 + $330.00) in spread of hours pay.

### B.   Statutory Damages under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted). After February 27, 2015, violations of Section 195(3) carry damages of $250 per

workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d).[9]

Here, plaintiff alleges that he never received a wage notice or wage statements from defendants at any point throughout the course of his employment. *See* Compl. ¶ 29. Because plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 100 days after February 27, 2015, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**. *See Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

### C.    Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260. Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to [100] percent of the total amount of the wages found to be due . . . unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a).

---

[9] Prior to February 27, 2015, employees were entitled to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500, and for wage statement violations of $100 per work week, not to exceed $2,500. *See Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotations and citation omitted).  However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions."  *Id.*; *see also* N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith.  *See Lu Nan Fan*, 2019 WL 1549033, at *11.  Plaintiff seeks **$65,988.73** (Dkt. 11 at 3; Dkt. 12 at 20) in liquidated damages for unpaid minimum wages ($2,752.53) and overtime wages ($63,236.20), under the NYLL.  As this Court has calculated plaintiff's damages according to the NYLL, plaintiff is entitled to 100 percent of his requested liquidated damages.  Accordingly, this Court recommends awarding plaintiff **$65,988.73** ($2,752.53+$63,236.20) in liquidated damages.

### D.    Pre-Judgment Interest

Plaintiff seeks pre-judgment interest on his unpaid minimum wages and overtime damages awarded for his NYLL claims.  *See* Dkt. 12 at 20.  "Prejudgment interest is compensatory in nature and is not available where a plaintiff successfully claims liquidated damages under the FLSA because the plaintiff is considered to have been appropriately compensated through the award of liquidated damages."  *Nam v. Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at *9 (E.D.N.Y. Mar. 9, 2021) (citing cases).  "The NYLL, however, explicitly provides that a successful plaintiff should receive both liquidated damages and

25

prejudgment interest." *Id*. (citing N.Y. Labor Law § 198(1-a)) (additional citations omitted). Accordingly, to avoid double recovery, courts calculate pre-judgment interest only on the compensatory damages awarded under the NYLL, not on the liquidated damages. *Id*. (citation omitted).

Pre-judgment interest on NYLL damages is calculated at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004. In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id*. § 5001(b). "Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as 'the earliest ascertainable date the cause of action existed,' or a reasonable intermediate date if damages were incurred at various times." *Nam*, 2021 WL 878743, at *9 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011)).

Here, plaintiff seeks pre-judgment interest from the midpoint of plaintiff's employment – January 10, 2019 – through the date of judgment in this action. *See* Dkt. 11 at ECF pages 4-5.

"To calculate the per diem interest rate, [courts must] multipl[y] the statutory rate of 9% per annum by the total damages award for [plaintiff's wage claims]." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2020 WL 5822455, at *11 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020). Here, plaintiff seeks interest for unpaid minimum wages and overtime damages. *See* Dkt. 11-7 (prejudgment interest calculation). Plaintiff may recover pre-judgment interest on his unpaid wages and overtime wages, which total **$65,988.73** ($2,752.53+$63,236.20). Interest on plaintiff's NYLL damages award accumulates at a rate of $16.27 per day (($65,988.73 × 9%)/365 days). Thus, the Court

recommends that plaintiff be awarded the daily prejudgment interest rate of $16.27 multiplied by the number of days between January 10, 2019 and the date judgment is entered.

### E.    Attorney's Fees and Costs

Plaintiff seeks to recovery $6,120.00 in attorney's fees and $714.00 in costs.  *See* Dkt. 11-8; Dkt. 12 at 20.  Plaintiff is entitled to recover reasonable attorney's fees and costs under the NYLL.  *See* N.Y. Lab. Law §§ 198, 663(1)).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged."  *Fermin*, 93 F. Supp. 3d at 51 (E.D.N.Y. 2015); *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  A fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Carey*, 711 F.2d at 1148.  "Failure to do so results in denial of the motion for fees."  *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010).  District courts have broad discretion in determining the reasonableness of an attorney's requested fees.  *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18 Civ. 3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

Plaintiff seeks to recover $6,120.00 in attorney's fees.  *See* Dkt. 12 at 20.  Plaintiff has submitted time records to support his fee application.  *See* Dkt. 11-8.  These records show that plaintiff's counsel billed a total of approximately 17.4. hours at a rate of $400 per hour.  *Id*.

The NYLL permits a plaintiff to recover reasonable attorney's fees similar to recovery for attorney's fees and costs under the FLSA.  To determine whether attorney's fees are reasonable, Courts consider both the hourly rate and number of hours worked.  *See Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983). Courts determine whether an attorney's hourly rate is reasonable by considering what a reasonable paying client would be willing to pay and by looking at the attorney's experience. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Shariff v. Alsaydi*, No. 11-CV-6377, 2013 WL 4432218, at *4 (E.D.N.Y. Aug. 15, 2013).

Here, plaintiff's counsel, Justin Cilenti is litigator with more than 25 years of experience in civil litigation. Mr. Cilenti was admitted to the practice of law in 1997. *See* Dkt. 11 at ECF page 6. Mr. Cilenti requests an hourly rate of $400, which is a reasonable rate for an attorney in the Eastern District of New York. Typically, courts award attorney's fees at a rate of $300 to $400 dollars per hour. *See e.g. Shariff*, 2013 WL 4432218, at *5 (collecting cases finding that attorney's fees of between $300 and $400 are reasonable in this district); *Whitney v. JetBlue Airways Corp.*, No. 07-CV-1397, 2009 WL 4929274, at *7 (E.D.N.Y. Dec. 21, 2009) ("[R]ates of $300 to $400 per hour for partners have been considered reasonable in the Eastern District"). Accordingly, this Court recommends awarding a reasonable hourly rate of $400 in attorney's fees for hours worked by Mr. Cilenti.

The requested hourly rate of paralegal work of $100 also appears to be reasonable for a paralegal in the Eastern District of New York. Dkt. 11 at ECF page 26; Dkt. 11-8. *See Ferrara v. Professional Pavers Corp.*, No. 11-CV-1433, 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from approximately $200 to $400 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals"); *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068, 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for

paralegals in fee-shifting cases"). Accordingly, this Court recommends awarding a reasonable hourly rate of $100 in fees for hours worked by Marcela Cardoso.

Next, this Court must determine that the hours billed were also reasonable. Courts award fees only for hours that are "reasonably expended." *Hensley*, 461 U.S. at 433. Plaintiff's counsel submitted an itemized time sheet showing that he and his paralegal spent 17.4 hours on, among other things, drafting a complaint, calculating damages, and drafting the motion for default judgment. *See* Dkt. 11-8. Attorney Justin Cilenti billed 14.6 hours, and paralegal Marcela Cardoso billed 2.8 hours. *Id*. The Court finds that the hours requested were "reasonably expended." These hours were expended over the course three months. *See* Dkt. 11-8; *c.f. Nam*, 2021 WL 878743, at *11 (finding that expending 27.3 hours litigating over fifteen months was reasonable); *Villarrubia v. La Hoguera Paisa Restaurant & Bakery Corp.*, No. 18-CV-4929, 2020 WL 6430327, at *2 (E.D.N.Y. Oct. 9, 2020) (finding that expending 35.45 hours litigating over thirteen months was reasonable). Thus, this Court recommends compensating plaintiff for the 14.6 hours worked by Mr. Cilenti at the rate of $400 per hour for attorney work and compensating plaintiff for the 2.8 hours worked by Cardoso at the rate of $100 per hour for paralegal work. This amounts to a total award of **$6,120.00** (($400×14.6)+($100×2.8)).

Plaintiff also seeks to recover litigation-related costs in the amount of $714.00, including the $400 filing fee, $214 service of process fee, and $100 private investigator fee. *See* Dkt. 11-8 at ECF page 2. These expenditures are itemized on plaintiff's counsel's time records. Thus, this Court recommends that plaintiff be awarded costs in the amount of **$714.00**.

### Conclusion

For the reasons set forth above, this Court recommends:

(1) granting plaintiff's motion for a default judgment against defendants, jointly and

severally, and entering judgment against defendants Eden Rose, Corp. d/b/a Eden Flowers, Isaac Shalomov, and Alexander Shalomov;

(2) awarding plaintiff damages totaling **$142,934.46**, consisting of **$2,752.53** in unpaid minimum wages, **$63,236.20** in unpaid overtime compensation, **$10,000** in statutory damages, **$65,988.73** in liquidated damages, and **$957.00** in spread of hours pay;

(3) awarding plaintiff pre-judgment interest as described above; and

(4) awarding **$6,120.00** in attorney's fees and **$714.00** in costs.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendants and to file proof of service on ECF by **March 7, 2023**. Any objections to the recommendations made in this Report must be filed with the Honorable Eric N. Vitaliano within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 17, 2023**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

      **SO ORDERED**

Dated: Brooklyn, New York
      March 3, 2023

                s/ James R. Cho
                James R. Cho
                United States Magistrate Judge